UNITED STATES *v.* SCHAEFFER & BUDENBURG CORP. (No. 3345)[1]

United States Court of Customs and Patent Appeals, January 28, 1931

*Charles D. Lawrence*, Assistant Attorney General (*James R. Ryan* and *Ralph Folks*, special attorneys, of counsel), for the United States.

*Brown & Carter* (*Allan R. Brown* and *Fred J. Carter* of counsel) for appellee.

[1] T. D. 44587.

[Oral argument December 10, 1930, by Mr. Folks and Mr. Brown]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

Certain glass tubing was entered by appellee at the port of New York. It was classified by the collector as scientific tubing under the first duty provision of paragraph 218 of the Tariff Act of 1922. The importer protested, claiming it to be dutiable as articles, not specially provided for, composed wholly or in chief value of glass, under another duty provision of the same paragraph. There was also an alternative claim under paragraph 230 of said act, as manufactures of glass. The court below sustained the protest under said paragraph 218, and the Government has appealed.

The relevant portions of said paragraph 218 are as follows:

PAR. 218, Biological, chemical, metallurgical, pharmaceutical, and surgical articles and utensils of all kinds, including all scientific articles, utensils, tubing and rods, whether used for experimental purposes in hospitals, laboratories, schools or universities, colleges, or otherwise, all of the foregoing, finished or unfinished, composed wholly or in chief value of glass or paste, or a combination of glass and paste, 65 per centum ad valorem; * * * all articles of every description not specially provided for, composed wholly or in chief value of glass or paste, or combinations of glass and paste, blown or partly blown in the mold or otherwise, or colored, cut, engraved, etched, frosted, gilded, ground (except such grinding as is necessary for fitting stoppers or for purposes other than ornamentation), painted, printed in any manner, sand-blasted, silvered, stained, or decorated or ornamented in any manner, whether filled or unfilled, or whether their contents be dutiable or free, 55 per centum ad valorem; * * *

On the trial in the court below the appraiser's report and the invoice entries were received in evidence, by agreement of the parties. The relevant portions of the same are, respectively, as follows:

The merchandise in question consists of tubing for thermometers composed wholly or in chief value of glass or paste, or a combination of glass and paste, used in hospitals, laboratories, schools, universities, etc. * * *

JENA BOROSILIKATGLASSTUBING 59 [111]

70 Kg. rod tubing with white enamel back $6^3$–$7^2$ m/m to sample 2918
30 " item $6^3$–$7^2$ " "
———
100 Kg. ends are closed with Paraffin

On the trial, counsel for the importer conceded that the articles of importation were as shown in the appraiser's report and were used in making thermometers. A sample of the merchandise was offered in evidence and is before us. It is about 3 inches in length and about five-sixteenths of an inch in diameter. In cross section it is shaped like an obtuse-angled cone with a rounded base. Extending along the rounded portion is a broad white line. A small hole extends through the sample, longitudinally.

340

The court below based its decision upon the theory that the first duty provision of said paragraph 218 does not provide for *parts* of scientific articles and utensils, and that, therefore, under a familiar rule in customs adjudication, it will be taken that the Congress did not intend such parts to be so included. These being parts of thermometers, the court holds they are not included as such within said duty provision. Again, the court holds that they can not be classified as *unfinished* scientific articles, because, to come within that provision, they must be wholly or in chief value of glass or paste, or a combination thereof; there being no proof in the record as to chief value, or as to the other elements entering into said thermometer, they are, therefore, not within the category of unfinished scientific articles. Finally, the court holds, as we understand it, basing its conclusion largely upon *United States* v. *Chesterton Co.*, 15 Ct. Cust. Appls. 175, T. D. 42232, that these articles can not be considered as scientific tubing because they are not used as imported, for scientific purposes, but merely as material to make parts of scientific instruments. This is also the argument of appellee here.

We are of the opinion this is too narrow a construction of this provision of law. In *United States* v. *Chesterton Co.*, *supra*, we had before us certain glass tubes, imported, and chiefly used for gauge glasses in water boilers. There was some attempt to show that some of these tubes had, at times, been used for scientific purposes, but this was, clearly, only a fugitive use. In passing upon the matter we came to the conclusion that tubing, to be included within the first duty provision of said paragraph 218, must be scientific tubing, the common meaning of which term we stated as follows:

Therefore "scientific tubing," as commonly understood, means a collective assembly of glass tubes, or material for glass tubes, which is of, or pertains to, or is used in, science. Whether the merchandise here imported is of such a character raises a question of fact, to be determined from the record.

Later, in answer to some suggestions made by counsel for appellant, we said:

If it be admitted that some of the imported gauge glasses have been used to make scientific instruments, that does not in itself demonstrate that they are scientific tubing. To illustrate, a test tube may be made out of a gauge glass but the gauge glass does not, because of that possibility, lose its identity.

This was not intended by the court to amount to a holding that if a piece of tubing was to be used as material for making a scientific instrument, it could not be classified, on that account, as scientific tubing. It was merely an expression by the court of the thought that a fugitive or occasional use of the tubing for making scientific instruments did not make it subject to classification as scientific instruments.

The language of this provision is "scientific * * * tubing and rods." It is not disputed that thermometers are scientific instruments. This tubing must be considered as to its condition when it entered our customs jurisdiction. It was then glass tubing, intended for and dedicated to, a scientific use. The mere fact that it was afterward combined with other materials to make it capable of its scientific purpose, does not, in our opinion, make it any the less scientific tubing. It is a matter of common knowledge that glass tubing, of various lengths and sizes, is used in scientific work in connection with rubber tubing and other appliances, to make scientific instruments and to perform scientific experiments. The fact that such tubing cannot be so used by itself does not render it any the less scientific tubing. The test is its chief use. The purpose of this paragraph, in our opinion, was to include all such tubing. ·

The judgment of the court below is *reversed*.